UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| XEROX CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ORANGE BOARD OF EDUCATION,<br><br>    Defendant. | Civil Action No. 22-1271 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter having been opened to the Court on Plaintiff Xerox Corporation's ("Xerox" or "Plaintiff") unopposed Motion for Default Judgment against Defendant Orange Board of Education (the "Board" or "Defendant"). (ECF No. 6.) The Court has carefully considered Plaintiff's submission and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiff's Motion.

**I.   BACKGROUND**[1]

This action arises from the Boards alleged failure to fulfill its payment obligations to Xerox under the agreements executed between the parties. (*See generally* ECF No. 1, Complaint ("Compl.").) On or about July 22, 2015, the Board entered into three separate agreements with Xerox for the use and maintenance of office equipment at the Board's office located at 451 Lincoln Avenue, City of Orange, NJ 07050. (*See* Compl. ¶¶ 5-17.)

---

[1] The facts of this matter derive from the Complaint ("Compl."), ECF No. 1, which the Court accepts as true for purposes of this Motion for Default Judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

Lease Agreement 1 ("Lease 1") – Lease 1 involves the use of the following office equipment: 1) V80P, S/N: XBN796963 and 2) V80EXP, S/N: XAF297487, ("Equipment 1"). (Compl. ¶ 5; ECF No. 1-1, Ex. A.) Under Lease 1, the Board was obligated to pay Xerox monthly charge of $3,653.29 for the use and maintenance of Equipment 1. (*Id.* ¶ 7.) Per Lease 1, the base billing through the end of the original term was $7,306.58. The extended base billing is $29,226.32, with a residual option to purchase invoice of $15,440.00.

Lease Agreement 2 ("Lease 2") - Lease 2 involves the use of the following equipment: 1) XC70, S/N: E2B652799; 2) C70EFI, S/N: R7B550811; 3) XC70, S/N: E2B652739; and 4) C70EFI, S/N: R7B550815, ("Equipment 2"). (*Id.*, ¶ 10.) Under Lease 2, the Board was obligated to pay Xerox a monthly charge of $822.90 for the use and maintenance of Equipment 2. (*Id.*, ¶ 12.) Per Lease 2, the base billing through the end of the original term was $1,645.80. The extended base billing is $7,623.62, with a residual option to purchase invoice of $4,740.00.

Lease Agreement 3 ("Lease 3") – Lease 3 involves a Lease Agreement as well as a Maintenance Agreement for the following equipment: 1) DPS144, S/N: FLX000618 and AC8500771 and 2) DPS 144, S/N: FLX000606 and AC850772 ("Equipment 3"). (*Id.*, ¶ 14.) Under Lease 3, the Board was obligated to pay Xerox a monthly charge of $11,735.87 for the use and maintenance of Equipment 3. (*Id.* ¶ 16.) Per Lease 3, the base billing through the end of the original term was $35,207.61. The extended base billing is $117,358.70, with a residual option to purchase invoice of $57,903.00.

On March 1, 2022, Xerox filed the instant Complaint alleging a breach of contract against the Board for failure fulfill its payment obligations under the terms of of Lease 1, Lease 2, and Lease 3 (collectively, the "Lease Agreements"). (*Id.* ¶ 21-26.) Specifically, Xerox alleges that Equipment 1 has not been surrendered and asserts that the Board owes a total of $51,972.90 on

2

Lease 1. (*Id.*, ¶¶ 8, 9.) Additionally, Xerox claims the Board owes a total of $14,009.42 on Lease 2 and a total of $210,469.31 on Lease 3. (*Id.* ¶¶ 13, 17.)

Defendant was served on March 16, 2022. (ECF No. 4.) On April 7, 2022, Xerox requested the Clerk of the Court to enter default against the Board. (ECF No. 5.) The Clerk then entered default against Defendant for failure to plead or otherwise defend this action. Thereafter, Plaintiff filed this Motion for Default Judgment against Defendants. (ECF No. 6.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2); *Anchorage Assocs. v. V. I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. See *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at 2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at 2 (D.N.J. Aug. 12, 2022). First, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Second, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at 1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court

assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at 3 (D.N.J. Jan. 11, 2018) (citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

## III.   DISCUSSION

### A. Jurisdiction and Proof of Service

The Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties" when a motion for default judgment is made against a non-appearing party. *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). Here, Plaintiff is a New York corporation with its principal place of business in Norwalk, Connecticut; Defendant is a municipal entity with its principal place of business in the City of Orange, New Jersey; and the amount in controversy exceeds $75,000. (*See* Compl. ¶¶ 1–4, 25.) Thus, Court has jurisdiction over this action, under 28 U.S.C. § 1332, as there is diversity in citizenship and there is an amount in controversy that exceeds $75,000.

Next, the Court must determine whether Plaintiff properly served the Defaulted Parties.

### B. Service of Process

Rule 4(j)(2) directs that "service upon …a municipal corporation … that is subject to suit by delivering a copy of the summons and of the complaint to the organization's chief executive officer or by serving a copy of the summons and of the complaint in the manner prescribed by that

state's law." Fed. R. Civ. P. 4(j)(2). The applicable law in New Jersey requires personal service on the "on the presiding officer or on the clerk or secretary thereof." N.J. Ct. R. R. 4:4-4(a)(8). Here, Summons and Complaint were served upon the Board's managing agent, Kathleen Henry, on March 16, 2022. (*See* ECF No. 4). Such satisfies this Court that Defendant was properly served.

### C. Sufficiency of Plaintiff's Cause of Action

Next, the Court evaluates "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs.*, Inc., 543 F. Supp. 2d at 365. The Court finds that it does. Under New Jersey law, the elements of a breach of contract claim are: "a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Peck v. Donovan*, 565 Fed. App'x. 66, 70 (3d Cir. 2012) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App. Div. 2007)).

Here, Xerox maintains that it entered into valid contracts, the Lease Agreements, with the Board, for the use of Equipment 1 through 3 (collectively the "Equipment"). (Compl. ¶¶ 5-17.) Under the agreement, the Board agreed to make monthly payments to Xerox for the use and maintenance of the Equipment. (*Id.*) Xerox submits that the Board defaulted on its obligations under the terms of the Lease Agreements by failing to fulfill its payment obligations. (Compl. ¶ 23.) In relevant part, the parties Lease Agreements provides as follows:

> 20. DEFAULT & REMEDIES. You will be in default under this Agreement if (1) Xerox does not receive any payment within 15 days after the date it is due, or (2) you breach any other obligation in this or any other agreement with Xerox. If you default, Xerox may, in addition to its other remedies (including cessation of Maintenance Services), remove the Equipment at your expense and require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month; (b) the Minimum Payments (less the Maintenance Services and Consumable Supplies components thereof, as reflected in Xerox's books and records) remaining in the Term, discounted at 4% per annum; (c) the applicable Purchase Option; and (d) all applicable Taxes. You will pay all reasonable costs, including attorneys' fees, incurred by Xerox to enforce this Agreement. If you make

5

the Equipment available for removal by Xerox within 30 days after notice of default, in the same condition as when delivered (reasonable wear and tear excepted), you will receive a credit for the fair market value of the Equipment as determined by Xerox, less any costs incurred by Xerox.

(*Id*. Ex. A ¶ 20.) Similarly, the parties Maintenance Agreement provides as follows:

12. DEFAULT & REMEDIES. You will be in default under this Agreement if (1) Xerox does not receive any payment within 15 days after the date it is due, or (2) you breach any other obligation in this or any other agreement with Xerox. If you default, Xerox may, in addition to its other remedies (including cessation of Maintenance Services), require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month; (b) the remaining Minimum Payments, not to exceed 6 such payments if this Agreement is for a one year Term and 12 such payments for a multi-year Term; and, (c) all applicable Taxes. You will pay all reasonable costs, including attorneys' fees, incurred by Xerox to enforce this Agreement.

(*Id*. Ex. C ¶ 12.) Consequently, Xerox is claiming damages in the amount of $276,451.63, plus accruing interest and fees. (*Id.*, ¶ 25.) Because "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true," the Court finds that Plaintiff adequately maintains a breach of contract claim against the Board. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotations omitted).

### D. Entry of Default Judgment is Appropriate

Finally, the Court considers whether entry of a default judgment is appropriate by weighing "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund*, 2018 WL 372167, at 3 (D.N.J. Jan. 11, 2018). First, the Court finds that because the Defaulted Parties failed to respond to the Complaint, they never pled a meritorious defense. *See Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009

6

WL 536403, at 1 (D.N.J. Feb. 27, 2009) ("[B]ecause [defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses."). Second, the Board's failure to respond prevents Xerox's prosecution and discovery and inhibits its ability to seek the proper relief. *See Peterson v. Boyarsky Corp.*, No. 08-1789, 2009 WL 983123, 4 (D.N.J. Apr. 8, 2009) ("Plaintiffs will be prejudiced if no default judgment is entered, because they have no other means of vindicating their claim against [defendant]."). Third, a "[d]efendant is also presumed culpable where it has failed to answer, move, or otherwise respond." *Slover v. Live Universe, Inc.*, No. 08–02645, 2009 WL 606133, at 2 (D.N.J. Mar. 9, 2009) (citation omitted). Here, since the Board has not responded to any of the pleadings over the course of the litigation, the presumption of culpability applies. *See Manin v. Gallagher*, No. 11-1261, 2012 WL 814367, at 3 (D.N.J. Mar. 9, 2012). The Court's analysis of these factors weigh in favor of awarding default judgment.

### E. Damages

The Court's inquiry does not end there. "Default does not establish liability for the amount of damages claimed by the plaintiff." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009). Pursuant to Rule 55(b)(2) the court "may conduct hearings" in order "to determine the amount of damages." "A claim for damages is not a 'sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default.'" *Boards of Trustees of operating Engineers Local 825 Welfare Fund v. Robert Silagy Landscaping Inc.*, No. 06-1795, 2006 WL 3308578, at *3 (D.N.J. Nov. 13, 2006) (quoting *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)).

7

Here, Xerox seeks damages in the amount of $276,451.63, plus accruing interest, reasonable attorney fees and costs. (*Id.* ¶¶ 26 25.) The Court is satisfied that there is an adequate basis for the $276,451.63 in damages Xerox seeks. (*See* ECF No. 6-2, Certification of H. Ducot, Ex. A, B, C.) However, Plaintiff also seeks court costs and reasonable attorneys' fees. (Compl. ¶¶ 25-26.) The Lease Agreements between Xerox and the Board provide for "all reasonable costs, including attorneys' fees, incurred by Xerox to enforce the Lease." (*Id.* ¶ 20; Cert. of H. Ducot, Ex. ¶ 21.) Accordingly, Plaintiff is entitled to such costs and fees in an amount to be determined by the Court upon Plaintiff's submission of documentary evidence in support of the same. *See, e.g., Cohen v. Fair Lawn Dairies*, Inc., 44 N.J. 450, 451–452 (1965) (enforcing contractual provision for reasonable counsel fees).

## IV. CONCLUSION

Accordingly, for the reasons stated above, Xerox's Motion for Default Judgment against the Board is **GRANTED**. Plaintiff is entitled to an award of damages consisting of Defendant's outstanding balance due, court costs and attorneys' fees. Xerox shall, within 30 days of the date of this Opinion, submit documentary evidence in support of the court costs and attorneys' fees it seeks for the Court's review. The Court will enter the total amount of final judgment upon the appropriate showing of proof.

**DATED:** December 8, 2022

JULIEN XAVIER NEALS
United States District Judge